Ed Haren v. Commissioner. Ed Haren and Sallie Haren v. Commissioner.
Haren v. Commissioner
Docket Nos. 80497, 80498.
United States Tax Court
T.C. Memo 1961-97; 1961 Tax Ct. Memo LEXIS 252; 20 T.C.M. (CCH) 432; T.C.M. (RIA) 61097; March 31, 1961
*252 Held, that respondent has not established by clear and convincing evidence that the returns for the taxable years involved were false or fraudulent with intent to evade tax within the meaning of section 276(a) of the 1939 Code. Accordingly, assessment and collection of the deficiencies in income tax and additions to tax are barred by the limitation provided in section 275(a). John Y. Merrell, Esq., Shoreham Bldg., Washington, D.C., and K. William O'Connor, Esq., for the petitioners. Frederick T. Carney, Esq. *253 , for the respondent. PIERCE Memorandum Findings of Fact and Opinion PIERCE, Judge: The respondent in Docket No. 80497 determined, through use of the increase in net worth plus nondeductible expenditures method, deficiencies in income tax and additions to tax against petitioner Ed Haren, for years and in amounts as follows: Additions to Tax
Year
Deficiency
Sec. 293(b)
Sec. 294(d)(2)
1945
$1,551.82
$ 775.91
1946
551.53
275.77
1947
2,232.04
1,116.02
$125.41
1948
1,883.70
941.85
In Docket No. 80498, respondent determined, through use of the net worth method, deficiencies in income tax and additions to tax against petitioners Ed and Sallie Haren, for years and in amounts as follows: Additions to Tax
Sec.
Sec.
Year
Deficiency
Sec. 293(b)
294(d)(1)(A)
294(d)(2)
1949
$1,340.88
$ 670.44
$ 153.90
$102.61
1950
2,333.45
1,166.73
228.02
152.00
1951
3,352.92
1,676.46
772.66
530.41
1952
7,454.78
3,727.39
1,130.25
753.50
1953
6,100.60
4,641.12
220.34 Respondent conceded in the course of his opening statement at the trial herein, that petitioners were not liable for *254 the additions to tax under section 294(d)(2) of the Internal Revenue Code of 1939, [1] for the years 1949 through 1952. The cases were consolidated for trial. The issues presented for decision are: 1. Are the assessment and collection of the deficiency and additions to tax for each of the taxable years 1945 through 1953, barred by the statute of limitation contained in section 275(a)? Solution of this issue hinges upon whether the return for each of said years was false or fraudulent with intent to evade tax, within the meaning of section 276(a). 2. What is the correct taxable income of the petitioners for each of the taxable years involved? 3. Was any part of the deficiency for each of said years due to fraud with intent to evade tax, within the meaning of section 293(b), so as to render the petitioners liable for additions to tax under said section? 4. Are the petitioners liable for the additions to tax under section 294(d)(1)(A) for failure to file a declaration of estimated tax, for each of the years 1949 through 1953? 5. Is petitioner Ed Haren liable *255 for the additions to tax under section 294(d)(2) for substantial underestimate of estimated tax, for the year 1947? Findings of Fact Some of the facts have been stipulated. The stipulation of facts, together with the exhibits referred to therein and attached thereto, is incorporated herein by reference. Petitioners Ed and Sallie Haren are husband and wife; and they reside in Etowah, McMinn County, Tennessee. Petitioner Ed Haren timely filed an individual Federal income tax return for each of the years 1945 through 1948, with the collector of internal revenue for the district of Tennessee. Petitioners Ed and Sallie Haren timely filed a joint Federal income tax return for each of the years 1949 through 1953 with the collector or district director of internal revenue for the district of Tennessee. The term "petitioner" will hereinafter have reference to Ed Haren. Petitioner was born in 1890. His only formal education consisted of 3 months of the first grade, which he received at the age of 14. He has never prepared an income tax return; and he did not, during the taxable years, have an understanding of the double-entry system of keeping books of account. He has resided at Etowah *256 since 1918, and he enjoys a good reputation for honesty and integrity in his home community, and also with the businessmen there and elsewhere, with whom he has dealt. Facts re Petitioner's Business Interests From 1923 to about 1931, petitioner was employed full time as a traveling salesman by various wholesale hardware companies. In the years following 1931 and extending through 1953, petitioner continued to travel for hardware companies, but not on a fulltime basis. During 1931, petitioner was president of a corporation known as Tennessee Plumbing and Electric Company, which corporation was declared bankrupt in 1932. From 1933 to 1935, petitioner was president of the Seminole Drug and Chemical Company, a manufacturer of patent medicine. From 1936 to 1940, petitioner operated as a sole proprietor, a plumbing business in Etowah. In 1941 he formed a partnership for the operation in Etowah of the same type of business. In 1942, petitioner resumed operation of a plumbing business as a proprietor, doing business at various times under the name of Etowah Plumbing and Heating Company, and at other times under the name of Etowah Heating Company. (Petitioner's activities in connection *257 with said proprietorship, which will hereinafter be called the "Heating Company," are the principal of his activities involved in the instant case.) Petitioner continued to operate the Heating Company proprietorship throughout the taxable years involved and thereafter. In 1941, petitioner formed another partnership, for the conduct of a plumbing business in Maryville, Tennessee, known as Maryville Plumbing and Heating Company. At the time of the formation of the Maryville partnership, petitioner had as his equal partner an individual named William E. Cline. The Maryville partnership continued to operate through 1953; and during an unspecified portion of the 12-year period of its existence, petitioner's son, E. B. Haren, Jr., was an equal partner therein, with his father and Cline. Cline apparently was the managing partner in charge of the business of the Maryville partnership. On September 1, 1950, petitioner and an individual named Roy T. Prichard, formed a partnership or joint venture under the name of Prichard and Haren, for the execution of a contract for the construction of a school at the village of Vonore, Tennessee. Said partnership or venture was dissolved on July 15, 1951, upon *258 completion of the above-mentioned contract. In about October 1951, petitioner and certain other unnamed and unspecified individuals organized a corporation known as Lenoir Plumbing and Heating Company. This corporation operated at a loss, and was dissolved in about June 1953, at which time the business was taken over by a partnership formed by petitioner and the above-mentioned William Cline. Said partnership was operated under the name of Haren and Cline. The principal place of business of both the corporation and the partnership was at Lenoir City, Tennessee. Facts re Operations of Etowah Heating Company From 1942 through 1945, the business of the Heating Company consisted of the sale of plumbing supplies; but in 1946 the operations of this proprietorship were expanded to include, in addition, the sale and installation of heating equipment (such as furnaces for houses and business establishments), and also the sale and installation of air conditioning equipment. In 1950 or 1951, petitioner further expanded the activities of the Heating Company to include operations of a general construction prime contractor (i.e., the erection of buildings), as well as those of a subcontractor *259 installing plumbing and heating equipment for other prime contractors. Petitioner did not himself maintain the books of account and records of the Heating Company. From 1944 through 1947, these records were maintained by an individual named Jackson, who was a retired locomotive engineer on the Louisville & Nashville Railroad. Jackson died some time late in 1947; and he was succeeded as the Heating Company's bookkeeper by an individual named W. D. Truitt, whose accounting training and experience is not revealed by the record. Truitt died at some time late in 1948 or early 1949; whereupon petitioner hired Edna Battle (hereinafter, for convenience, referred to simply as "Edna") to keep the books and act as his secretary. Edna's academic training for the position consisted of a 3-months' course in accounting and typing, taken while she was attending a small college; and she had had no prior bookkeeping experience. Edna was the bookkeeper for the Heating Company throughout the remainder of the taxable years, with the exception of the summer of 1949 and a 1-month period from mid-February to mid-March, 1953. During said periods of Edna's absence, petitioner relied upon either his daughter *260 or a young woman who had clerked in a grocery store, to keep the Heating Company's books and records. The books of account kept for the Heating Company for the years 1944 through 1948 consisted of a journal (described in the testimony as a "day book"), and an accounts receivable ledger. When Edna became the bookkeeper, she installed a double-entry system of accounts, utilizing a general journal ("day book"), cash receipts and disbursements journal, a general ledger, and an accounts receivable ledger. At some time thereafter, additional subsidiary ledgers of an unspecified character were installed. With respect to billings and payments for work performed by the Heating Company as either a prime contractor or a subcontractor, Edna would customarily make the following entries. When an invoice (billing) was sent to a particular customer, a debit was made to accounts receivable, and a credit was made to sales. When the customer paid such invoice, an entry was made to debit cash and to credit accounts receivable. [2]
*261 Facts re Preparation of Income Tax Returns Petitioner's tax return for each of the years 1945 through 1948 was prepared by Clarence Littleton, a deputy collector of internal revenue stationed in Knoxville. Littleton also prepared the joint return filed by petitioner and his wife for each of the years 1949 and 1950. Each of the foregoing returns, insofar as the income and expenses of the Heating Company were concerned, was prepared through use of a profit and loss statement taken by the Heating Company's bookkeeper from the books and records of said proprietorship. The joint return filed by petitioner and his wife for the year 1951 was prepared by C. H. Lockerby, a certified public accountant. Lockerby had had occasion to examine the books of account and the bank statements of the Heating Company in December 1951, during the course of a professional engagement occasioned by the fact that said proprietorship's business had expanded and petitioner desired assurance that Edna was keeping the books properly. Thereafter in January 1952, petitioner brought to Lockerby's office data and figures prepared by Edna from the Heating Company's books and records; and utilizing such materials, *262 Lockerby prepared the above-mentioned 1951 joint return. The Heating Company's income and expenses, as they appeared on Schedule C thereof, were in line with the income and expense figures which Lockerby had found and computed in the December 1951 examination of the proprietorship's records. The record does not establish the identity of the person or persons who prepared the 1952 joint return filed by petitioner and his wife. The 1953 joint return filed by petitioner and his wife was prepared by another certified public accountant, Keith Sherrod. Sherrod prepared said return directly from the books and records of the Heating Company, insofar as the income and expenses of the proprietorship were concerned. Other information necessary for the preparation of said return was obtained from records which petitioner had and made available to Sherrod. Facts re Respondent's Audit and Determination Agents of the respondent began an audit of the returns of petitioner and his wife in October 1954. At that time, the books and records relating to the Heating Company for the years prior to 1949 (i.e., prior to the time when Edna installed the doublentry system) were no longer available; and, *263 as regards the years 1949 through 1953, the agents determined that the books and records relative to these years did not correctly reflect income, due to the fact that certain items of income were not recorded in the books of account. Said agents decided that it would be necessary in the light of the foregoing circumstances, to compute the income of petitioner and his wife through use of the increase in net worth plus nondeductible personal expenditures method. The following table shows the assets, liabilities, net worth, increases in net worth, personal expenditures, certain miscellaneous adjustments, and the resultant alleged understatement of income for petitioner and his wife for each of the years 1945 through 1953 - all as determined by the agents of the respondent (items of assets, liabilities and personal expenditures marked by an asterisk (*) are in dispute): COMPUTATION OF NET WORTH
Years ending December 31, 1944-December 31, 1948
Item
No.
ASSETS
12-31-44
12-31-45
1 *
Cash on hand
None *
None *
2 *
Cash in banks (checking ac-
counts): (a) Cantrell Banking Co., Eto-
wah, Tenn.
(1) * Ed Haren d/b/a Etowah
Heating Co.
$ 4,247.69 *
$ 6,486.40 *
(2) Ed Haren - Personal
(b) First National Bank, Athens,
Tenn.
(1) Ed Haren - Personal
(c) Bank of Maryville, Mary-
ville, Tenn.
(1) * Ed Haren - Personal
5,850.00 *
(d) Bank of Riceville,
Riceville, Tenn.
(1) Ed Haren - Personal
2.09
2.09
3 *
War bonds
4,500.00
4,500.00 *
4
Materials inventory - Heating
896.00
1,485.40
Co.
5
Office supplies inventory -
Heating Co.
6 *
Accounts receivable - Heating
None *
None *
Co.
7
Notes receivable - Heating Co.
8
Contracts receivable - Heating
Co.
9
Prepaid interest - Heating Co.
10
Advance to Prichard & Haren,
Vonore, Tenn.
11 *
Capital account - Maryville
983.80 *
525.22 *
Plbg. & Htg. Co.
12
Investments: (a) Etowah Funeral Home
(b) W. E. Hamby Const. Co. -
Loan
(c) Lenoir Plbg. & Htg. - com.
stk.
(d) Etowah Builders & Devel-
opers
(1) Common stock - 183 shs.
(2) Preferred stock - 47 1/2
shs.
(e) Missouri-Kansas Pipe Line -
1,200.00
1,200.00
com. stk.
13 *
Office equipment - Heating Co.
360.00 *
360.00 *
14 *
Shop tools - Heating Co.
888.00 *
888.00 *
15 *
Trucks - Heating Co.
600.00 *
600.00 *
16 *
Business automobile - Ed Haren
None *
None *
17 *
Personal automobile - Sallie
Haren
18
Household furnishings
19
M. L. Hutchinson property
2,725.00
20
Land & Buildings - Heating Co.
21
Haren & Cline farm (1/2 int.)
22
Tom Long property
23
Residence, Etowah, Tenn
4,800.00
4,800.00
24
Residence, Tucson, Arizona
25
Residence improvements, Tucson
26
Martin lots
27
Watts Bar Lake lots
TOTAL ASSETS
$21,202.58
$ 26,697.11
LIABILITIES
28
Notes Payable: (a) Cantrell Banking Co.,
Etowah, Tenn.
(1) Etowah Heating Co.
(2) Ed Haren - Personal
(b) Citizens National Bank,
Athens, Tenn.
(1) Ed Haren - Personal
29
Mortgages Payable: (a) Valley National Bank,
Tucson, Arizona
(1) Residence, Tucson, Ariz.
- 1st Mtg.
(b) R. W. Poe, Tucson, Arizona
(1) Residence, Tuscon, Ariz.
- 2nd Mtg.
30
Accounts payable - Heating Co.
31
Subcontracts payable - Heating
Co.
32
Advances on contracts - Heating
Co.
33
Accrued interest
34
Taxes payable
35
Advances - Prichard & Haren
36
Reserve for depreciation
$ 674.40
$ 949.20
TOTAL LIABILITIES
$ 674.40
$ 949.20
NET WORTH
$20,528.18
$ 25,747.91
Previous year net worth
20,528.18
Increase in net worth
$ 5,219.73
37
Add personal expenditures: (a) Income tax payments
76.88
(b) * Personal living expenses
4,000.00
(c) Gifts to Frank Haren, son
(d) Gifts to Mrs. Art McGee,
daughter
(e) Gifts to Jimmy Haren, son
TOTAL
$ 9,296.61
38
Less capital gain and other
exclusions: (a) M. L. Hutchinson property
(262.50)
(b) Haren & Cline farm (1/2
int.)
Corrected net income
$ 9,034.11
Net income reported on return
2,645.22
Unreported net income
$ 6,388.89
*264 COMPUTATION OF NET WORTH
Years ending December 31, 1944-December 31, 1948
Item
No.
ASSETS
12-31-46
12-31-47
12-31-48
1 *
Cash on hand
None *
None *
$ 48.59
2 *
Cash in banks (checking ac-
counts): (a) Cantrell Banking Co., Eto-
wah, Tenn.
(1) * Ed Haren d/b/a Etowah
Heating Co.
$ 6,082.05 *
$ 870.98 *
$ 598.22
(2) Ed Haren - Personal
(b) First National Bank, Athens,
Tenn.
(1) Ed Haren - Personal
2,000.00
1,069.24
(c) Bank of Maryville, Mary-
ville, Tenn.
(1) * Ed Haren - Personal
3,695.98 *
(d) Bank of Riceville,
Riceville, Tenn.
(1) Ed Haren - Personal
2.09
2.09
2.09
3 *
War bonds
4
Materials inventory - Heating
3,025.00
8,919.62
9,555.93
Co.
5
Office supplies inventory -
Heating Co.
6 *
Accounts receivable - Heating
None *
5,551.21 *
3,161.23
Co.
7
Notes receivable - Heating Co.
8
Contracts receivable - Heating
Co.
9
Prepaid interest - Heating Co.
10
Advance to Prichard & Haren,
Vonore, Tenn.
11 *
Capital account - Maryville
143.78 *
1,508.64 *
3,158.94 *
Plbg. & Htg. Co.
12
Investments: (a) Etowah Funeral Home
(b) W. E. Hamby Const. Co. -
Loan
(c) Lenoir Plbg. & Htg. - com.
stk.
(d) Etowah Builders & Devel-
opers
(1) Common stock - 183 shs.
(2) Preferred stock - 47 1/2
shs.
(e) Missouri-Kansas Pipe Line -
1,200.00
1,200.00
1,200.00
com. stk.
13 *
Office equipment - Heating Co.
360.00 *
631.90 *
2,000.19 *
14 *
Shop tools - Heating Co.
888.00 *
888.00 *
2,987.55 *
15 *
Trucks - Heating Co.
1,010.49 *
1,010.49 *
1,010.49 *
16 *
Business automobile - Ed Haren
1,485.00 *
1,485.00 *
1,447.81 *
17 *
Personal automobile - Sallie
None *
Haren
18
Household furnishings
19
M. L. Hutchinson property
20
Land & Buildings - Heating Co.
4,000.00
8,000.00
8,000.00
21
Haren & Cline farm (1/2 int.)
1,750.00
22
Tom Long property
23
Residence, Etowah, Tenn
4,800.00
4,800.00
4,800.00
24
Residence, Tucson, Arizona
15,000.00
15,000.00
25
Residence improvements, Tucson
761.00
761.00
26
Martin lots
27
Watts Bar Lake lots
TOTAL ASSETS
$ 30,442.39
$ 51,697.97
$ 53,732.04
LIABILITIES
28
Notes Payable: (a) Cantrell Banking Co.,
Etowah, Tenn.
(1) Etowah Heating Co.
$ 5,000.00
$ 1,000.00
(2) Ed Haren - Personal
(b) Citizens National Bank,
Athens, Tenn.
(1) Ed Haren - Personal
29
Mortgages Payable: (a) Valley National Bank,
Tucson, Arizona
(1) Residence, Tucson, Ariz.
- 1st Mtg.
4,576.79
4,399.30
(b) R. W. Poe, Tucson, Arizona
(1) Residence, Tuscon, Ariz.
- 2nd Mtg.
3,273.75
30
Accounts payable - Heating Co.
3,335.01
31
Subcontracts payable - Heating
Co.
32
Advances on contracts - Heating
Co.
33
Accrued interest
34
Taxes payable
35
Advances - Prichard & Haren
36
Reserve for depreciation
$ 1,083.10
$ 1,974.85
$ 2,598.93
TOTAL LIABILITIES
$ 1,083.10
$ 14,825.39
$ 11,333.24
NET WORTH
$ 29,359.29
$ 36,872.58
$ 42,398.80
Previous year net worth
25,747.91
29,359.29
36,872.58
Increase in net worth
$ 3,611.38
$ 7,513.29
$ 5,526.22
37
Add personal expenditures: (a) Income tax payments
77.82
592.25
141.83
(b) * Personal living expenses
4,000.00
4,000.00
5,929.85 *
(c) Gifts to Frank Haren, son
(d) Gifts to Mrs. Art McGee,
daughter
(e) Gifts to Jimmy Haren, son
TOTAL
$ 7,689.20
$ 12,105.54
$ 11,597.90
38
Less capital gain and other
exclusions: (a) M. L. Hutchinson property
(b) Haren & Cline farm (1/2
(125.00)
int.)
Corrected net income
$ 7,689.20
$ 11,980.54
$ 11,597.90
Net income reported on return
5,175.60
3,069.31
(2,625.94)
Unreported net income
$ 2,513.60
$ 8,911.23
$ 14,223.84
*265 Years ending December 31, 1949-December 31, 1953
Item
No.
ASSETS
12-31-49
12-31-50
12-31-51
1
Cash on hand
$ 27.38
$ 357.20
$ 73.29
2
Cash in banks (checking ac-
counts): (a) Cantrell Banking Co., Eto-
wah, Tenn.
(1) Ed Haren d/b/a Etowah
Heating Co.
(245.80)
9,319.29
77.17
(2) Ed Haren - Personal
175.00
10.02
1,021.41
(b) First National Bank, Athens,
Tenn.
(1) Ed Haren - Personal
(c) Bank of Maryville, Mary-
ville, Tenn.
(1) Ed Haren - Personal
(d) Bank of Riceville, Riceville,
Tenn.
(1) Ed Haren - Personal
2.09
2.09
2.09
3
War bonds
4
Materials inventory - Heating Co.
8,783.31
15,324.26
17,530.00
5
Office supplies inventory - Heat-
ing Co.
32.67
24.74
127.80
6
Accounts receivable - Heating Co.
2,094.03
5,733.90
18,133.60
7
Notes receivable - Heating Co.
1,105.27
8 *
Contracts receivable - Heating Co.
9
Prepaid interest - Heating Co.
10
Advance to Prichard & Haren,
Vonore, Tenn.
20,000.00
11 *
Capital account - Maryville Plbg.
& Htg. Co.
7,381.93 *
9,197.87 *
12,431.02 *
12 *
Investments: (a) Etowah Funeral Home
200.00
200.00
(b) * W. E. Hamby Const. Co. -
Loan
10,000.00 *
(c) Lenoir Plbg. & Htg. - com.
stk.
1,000.00
(d) Etowah Builders & Devel-
opers
(1) * Common stock - 183 shs.
(2) Preferred stock - 47 1/2
shs.
(e) Missouri-Kansas Pipe Line -
com. stk.
1,200.00
1,200.00
1,200.00
13 *
Office equipment - Heating Co.
2,000.19 *
2,000.19 *
2,000.19 *
14 *
Shop tools - Heating Co.
2,987.55 *
2,987.55 *
2,987.55 *
15 *
Trucks - Heating Co.
2,874.83 *
5,220.83 *
5,220.83 *
16 *
Business automobile - Ed Haren
2,044.24 *
2,044.24 *
2,044.24 *
17 *
Personal automobile - Sallie Haren
None *
2,700.00 *
2,700.00 *
18
Household furnishings
580.80
580.80
580.80
19
M. L. Hutchinson property
20
Land & Buildings - Heating Co.
8,000.00
8,000.00
8,000.00
21
Haren & Cline farm (1/2 int.)
22
Tom Long property
1,500.00
1,500.00
23
Residence, Etowah, Tenn.
4,800.00
4,800.00
4,800.00
24
Residence, Tucson, Arizona
15,000.00
15,000.00
15,000.00
25
Residence improvements, Tucson
761.00
761.00
761.00
26
Martin lots
27
Watts Bar Lake lots
TOTAL ASSETS
$58,499.22
$106,963.98
$108,496.26
LIABILITIES
28
Notes Payable: (a) Cantrell Banking Co., Eto-
wah, Tenn.
(1) Etowah Heating Co.
$ 5,000.00
$ 6,000.00
(2) Ed Haren - Personal
10,500.00
10,000.00
(b) Citizens National Bank,
Athens, Tenn.
(1) Ed Haren - Personal
10,000.00
29
Mortgages Payable: (a) Valley National Bank, Tuc-
son, Arizona
(1) Residence, Tucson, Ariz.
- 1st Mtg.
$ 4,213.68
4,019.52
3,816.45
(b) R. W. Poe, Tucson, Arizona
(1) Residence, Tuscon, Ariz.
- 2nd Mtg.
30
Accounts payable - Heating Co.
2,559.49
6,521.24
4,730.81
31
Subcontracts payable - Heating
Co.
32
Advances on contracts - Heating
Co.
33
Accrued interest
34
Taxes payable
35
Advances - Prichard & Haren
10,000.00
36
Reserve for depreciation
3,497.67
5,527.08
7,639.48
TOTAL LIABILITIES
$10,270.84
$ 51,567.84
$ 32,186.74
NET WORTH
$48,228.38
$ 55,396.14
$ 76,309.52
Previous year net worth
42,398.80
48,228.38
55,396.14
Increase in net worth
$ 5,829.58
$ 7,167.76
$ 20,913.38
37
Add personal expenditures: (a) Income tax payments
369.26
199.95
(b) * Personal living expenses
6,499.94 *
7,193.35 *
6,488.67 *
(c) * Gifts to Frank Haren, son
1,545.30 *
(d) Gifts to Mrs. Art McGee,
daughter
600.00
1,003.20
(e) Gifts to Jimmy Haren, son
TOTAL
$12,329.52
$ 15,330.37
$ 30,150.50
38
Less capital gain and other ex-
clusions: (a) M. L. Hutchinson property
(b) Haren & Cline farm (1/2 int.)
(c) 1948 income tax refund re-
ceived in 1949
(141.83)
Corrected net income
$12,187.69
$ 15,330.37
$ 30,150.50
Net income reported on return
5,224.36
4,149.16
22,044.40
Unreported net income
$ 6,963.33
$ 11,181.21
$ 8,106.10
*266 Years ending December 31, 1949-December 31, 1953
Item
No.
ASSETS
12-31-52
12-31-53
1
Cash on hand
$ 246.78
$ 414.08
2
Cash in banks (checking ac-
counts): (a) Cantrell Banking Co., Eto-
wah, Tenn.
(1) Ed Haren d/b/a Etowah
Heating Co.
1,823.57
1,869.66
(2) Ed Haren - Personal
1,599.28
25,386.63
(b) First National Bank, Athens,
Tenn.
(1) Ed Haren - Personal
(c) Bank of Maryville, Mary-
ville, Tenn.
(1) Ed Haren - Personal
(d) Bank of Riceville, Riceville,
Tenn.
(1) Ed Haren - Personal
2.09
2.09
3
War bonds
4
Materials inventory - Heating Co.
14,366.27
16,924.59
5
Office supplies inventory - Heat-
ing Co.
126.61
108.92
6
Accounts receivable - Heating Co.
23,829.70
7,599.41
7
Notes receivable - Heating Co.
1,927.15
1,503.59
8 *
Contracts receivable - Heating Co.
17,221.00 *
9
Prepaid interest - Heating Co.
320.91
10
Advance to Prichard & Haren,
Vonore, Tenn.
11 *
Capital account - Maryville Plbg.
& Htg. Co.
10,545.92 *
12,261.17 *
12 *
Investments: (a) Etowah Funeral Home
200.00
(b) * W. E. Hamby Const. Co. -
Loan
(c) Lenoir Plbg. & Htg. - com.
stk.
1,000.00
(d) Etowah Builders & Devel-
opers
(1) * Common stock - 183 shs.
18,300.00 *
(2) Preferred stock - 47 1/2
shs.
4,750.00
(e) Missouri-Kansas Pipe Line -
com. stk.
1,200.00
1,200.00
13 *
Office equipment - Heating Co.
2,000.19 *
2,882.29 *
14 *
Shop tools - Heating Co.
11,541.06 *
27,186.69 *
15 *
Trucks - Heating Co.
6,893.76 *
9,893.76 *
16 *
Business automobile - Ed Haren
2,729.20 *
2,729.20 *
17 *
Personal automobile - Sallie Haren
2,700.00 *
2,700.00 *
18
Household furnishings
896.00
1,633.41
19
M. L. Hutchinson property
20
Land & Buildings - Heating Co.
8,000.00
8,000.00
21
Haren & Cline farm (1/2 int.)
22
Tom Long property
1,500.00
1,500.00
23
Residence, Etowah, Tenn.
4,800.00
4,800.00
24
Residence, Tucson, Arizona
15,000.00
15,000.00
25
Residence improvements, Tucson
761.00
761.00
26
Martin lots
2,500.00
27
Watts Bar Lake lots
200.00
TOTAL ASSETS
$130,909.58
$170,427.40
LIABILITIES
28
Notes Payable: (a) Cantrell Banking Co., Eto-
wah, Tenn.
(1) Etowah Heating Co.
$ 9,500.00
$ 5,000.00
(2) Ed Haren - Personal
(b) Citizens National Bank,
Athens, Tenn.
(1) Ed Haren - Personal
29
Mortgages Payable: (a) Valley National Bank, Tuc-
son, Arizona
(1) Residence, Tucson, Ariz.
- 1st Mtg.
3,604.04
3,381.86
(b) R. W. Poe, Tucson, Arizona
(1) Residence, Tuscon, Ariz.
- 2nd Mtg.
30
Accounts payable - Heating Co.
2,007.96
14,843.02
31
Subcontracts payable - Heating
Co.
7,193.68
2,722.55
32
Advances on contracts - Heating
Co.
11,071.51
33
Accrued interest
97.50
34
Taxes payable
1,057.60
487.88
35
Advances - Prichard & Haren
36
Reserve for depreciation
9,305.55
18,470.13
TOTAL LIABILITIES
$ 32,668.83
$ 56,074.45
NET WORTH
$ 98,240.75
$114,252.95
Previous year net worth
76,309.52
98,240.75
Increase in net worth
$ 21,931.23
$ 16,012.20
37
Add personal expenditures: (a) Income tax payments
5,568.32
10,369.04
(b) * Personal living expenses
6,957.97 *
8,504.26 *
(c) * Gifts to Frank Haren, son
(d) Gifts to Mrs. Art McGee,
daughter
96.57
(e) Gifts to Jimmy Haren, son
1,500.00
TOTAL
$ 36,054.09
$ 34,885.50
38
Less capital gain and other ex-
clusions: (a) M. L. Hutchinson property
(b) Haren & Cline farm (1/2 int.)
(c) 1948 income tax refund re-
ceived in 1949
Corrected net income
$ 36,054.09
$ 34,885.50
Net income reported on return
20,272.41
13,543.63
Unreported net income
$ 15,781.68
$ 21,341.87
*267 With respect to the foregoing disputed items, the Court makes the following findings of fact: Item No. 1. - The petitioner had some amount of cash on hand (as distinguished from cash on deposit in banks) at December 31 of each of the years 1944 through 1947. The amount thereof at each such date can not be determined from the record. Item No. 2(a)(1). - Petitioner had on deposit in the checking account of the Heating Company at the Cantrell Banking Company in Etowah, on December 31 of each of the years 1944 through 1947, the amounts determined by the respondent. Item No. 2(c)(1). - Petitioner had on deposit, at December 31, 1945 and 1946, in his personal checking account at the Bank of Maryville, the amounts determined by the respondent. Item No. 2(d)(1). - Petitioner did not have on hand $4,500 in "war bonds" at December 31, 1945. Said bonds had been redeemed in 1945, and the proceeds were deposited in petitioner's personal account in the Bank of Maryville. Item No. 6. - Petitioner had some trade accounts receivable for the Heating Company on December 31 of each of the years 1944 through 1946. The amount thereof at each such date can not be determined from the record. Petitioner *268 has not established that the trade accounts of the Heating Company at December 31, 1947, were in an amount different from that determined by the respondent. Item No. 8. - The amount of contracts receivable at December 31, 1952, as determined by respondent, $17,221, is overstated by $7,201.90, made up of: (a) $5,701.90 which was included in accounts receivable, and (b) $1,500 representing a liability owing by petitioner to the prime contractor for damage done by petitioner to the work of another contractor. Item No. 11. - Petitioner's capital account in the partnership Maryville Plumbing and Heating Company was in an amount larger than that shown in the respondent's statement, as of December 31 of each of the years 1944 through 1949, by reason of the fact that petitioner's original investment in such partnership and additional contributions for the years 1941 and 1942 were not considered by the respondent's agent in making up the net worth statement. The amount of the understatement of said capital account as of each of the above-mentioned dates can not be determined from the record. Petitioner has not established that the amount of his capital account in the Maryville partnership, *269 as of December 31 of each of the years 1950 through 1953 is different than that determined by the respondent for each such date. Item No. 12(b). - Petitioner, either individually or in his capacity of proprietor of the Heating Company, had an investment of $10,000 as of December 31, 1951, representing a loan to the W. E. Hamby Construction Company. Item No. 12(d)(1). - Petitioner's cost basis for the 183 shares of Etowah Builders & Developers common stock which he owned at December 31, 1953, was $18,300. Items Nos. 13, 14, and 15. - The amounts shown for these items in the above statement were correctly determined by the respondent. Item No. 16. - Petitioner had an automobile which he used for business purposes, at December 31 of each of the years 1944 and 1945. The adjusted basis of said automobile at each of said dates can not be determined from the record. Item No. 17. - Petitioner's wife owned an automobile at December 31 of each of the years 1948 and 1949, and for many years prior thereto. The cost or other basis of the said automobile at December 31, 1948, and 1949, can not be determined from the record. Item No. 34. - Petitioner had liabilities for taxes payable *270 of $1,547.26 at December 31, 1953, instead of $487.88 as determined by the respondent. Item No. 37(b). - Pursuant to concession of the respondent made at the trial herein, the amount of petitioner's personal living expenses for the year ending December 31, 1953, are to be reduced by $1,500. Of the living expenses determined by respondent for the year 1952, an indeterminate portion thereof represented deductible traveling expenses of the petitioner for said years. Petitioner has not established that his personal living expenses for the years 1945 through 1951, were less than determined by the respondent. Item No. 37(c). - Pursuant to concession by the respondent, the alleged gift of $1,545.30 in 1951 to petitioner to his son Frank is to be eliminated from the personal expenditures for said year. Facts re Alleged Specific Acts of Fraud On January 9, 1951, Maryville Plumbing and Heating Company issued its check in the amount of $382.98 payable to the Heating Company. When this check was received, Heating Company's bookkeeper stamped the Heating Company's endorsement thereon, and credited the Maryville Company's account with $222.98 as being payment in full. The balance of $160 *271 was not recorded on the Heating Company's books by the bookkeeper. No explanation of the omission was required or presented by the bookkeeper in the course of her testimony. On March 1, 1951, W. E. Cline (petitioner's partner in the Maryville Plumbing and Heating Company) drew a check payable to the Heating Company for $2,360. Petitioner endorsed the Heating Company's name on the check, cashed the same, and deposited $1,700 of the proceeds in the Heating Company's bank account. An entry was made in the Heating Company's day book debiting cash and crediting the account of the First Avenue Baptist Church in Lenoir City, for whom work had been performed. The balance of $660 represented reimbursement to petitioner and Cline, in their individual capacities, for out-of-pocket expenses for labor and materials which they had paid in connection with the performance of the work for the church. During 1951 and 1952 pipe was in short supply due to the military requirements occasioned by the Korean War. Petitioner was able to purchase more pipe than he actually required for plumbing jobs being performed by the Heating Company. The excess pipe was disposed of by petitioner, at cost, to other *272 contractors and business houses with whom he dealt. Most of such excess pipe was purchased by petitioner individually for cash. The parties to whom petitioner sold such pipe, paid for the same in some instances with checks drawn payable to the Heating Company, which petitioner endorsed and deposited in his personal bank account. On two occasions in 1951, petitioner's purchases of surplus pipe (in the respective amounts of $342.75 and $86.52) were charged as expenses on the Heating Company's books, through error. One of the firms to which petitioner sold excess pipe was the Hammer Supply Company of Athens, Tennessee. Said company issued five checks payable to the order of the Heating Company in payment for pipe, in the total amount of $3,216.85 in 1951, and one check in the amount of $343.09 in 1952. The foregoing six checks were deposited in petitioner's personal bank account. The amounts thereof were not recorded as sales on the Heating Company's books. During 1952, petitioner received checks from the Jones-Sylar Supply Company of Chattanooga, Tennessee, representing commissions for sales of merchandise made by petitioner acting as a salesman for said company. Said checks were in *273 the respective amounts of $8.20, $8.77, $16.20, and $29.55, and were received after petitioner had quit working for the Jones-Sylar Company. Petitioner did not report the commissions as income on his 1952 return. On February 19, 1953, petitioner received a check in the amount of $17,221 drawn by W. E. Hamby Construction Company, payable to the Heating Company, as the final payment for work as the plumbing and heating subcontractor on a job known as the Clinton Housing Project. Petitioner deposited the entire amount of said check in his personal bank account, without recording it on the books of the Heating Company, for reasons set forth in the statement attached to the amended return hereinafter mentioned. On May 11, 1953, the city of Etowah drew its check in the amount of $4,844.98, payable to the Heating Company for work done on a job known as the De Lano gas line contract. This check was endorsed by petitioner and deposited to his personal bank account. The receipt of said check was not recorded on the Heating Company's books, nor was the amount of said check included in gross income in the original joint return filed by petitioner and his wife for the year 1953 (see statement *274 attached to amended return hereinafter mentioned). Petitioner was hospitalized for diabetes from December 17, 1952, through December 26, 1952. He also was hospitalized for a period of 8 days immediately after January 7, 1953. Since his last period of hospitalization, petitioner has been required to follow a diabetic diet and to take daily dosages of insulin. During the period from January 7, 1953, to December 31, 1954, petitioner was required to see his physician on 27 occasions because of his diabetic condition. Petitioner and his wife filed an amended return for the year 1953, on April 28, 1958. Appended to said amended return was a typewritten statement entitled "Explanation of Amended Return," in which the following statements were included: 4. By an oversight, because of change of book-keepers, and due to sickness, the following items of income were overlooked and not registered as income February 19, 1954, for 1953, to wit: (a) February 21, 1953, check from Hamby Construction Company contract (or its bonding company) of $17,221.00, in payment of its stock repurchased at cost of $10,000.00, and leaving net income of $7,221.00. (b) May - 1953 warrant from City of Etowah, *275 Tenn., on contract, $4,844.98. 5. In 1945 [should be 1954] when assisting E. R. Swafford, Jr., I.R.A., in checking the joint return for errors, said items were discovered by Ed Haren and called to attention of said agent, and offered to be paid at once, if the agent would figure the additional tax for him. Taxpayer did not know how to figure or pay it. This assistance has never been given taxpayer by any agent; and he has now had his attorneys figure it as best they can, with 6% interest from March 15, 1954 when due, to April 25, 1958. 6. Additional tax due March
15, 1953
$3,181.64
Interest at 6% to April
25, 1958
785.87
$3,967.41
As hereinabove found, the return of petitioner, or of petitioner and his wife, for each of the taxable years 1945 through 1953 here involved, was timely filed. The notices of deficiency covering said years 1945 through 1953 were not mailed to the petitioner and his wife until April 20, 1959, more than 5 years after the due date for filing the return for 1953, the most recent of the taxable years here involved. Ultimate Facts None of the returns filed by petitioner, or by petitioner and his wife, for any of the years 1945 *276 through 1953, was false or fraudulent with intent to evade tax within the meaning of section 276(a). Opinion Assessment and collection of all the asserted deficiencies and additions to tax involved in the instant case are barred by the statute of limitation contained in section 275(a), unless the respondent establishes by clear and convincing evidence that the returns filed by the petitioner, or by the petitioner and his wife, were false or fraudulent with intent to evade tax within the meaning of section 276(a). After seeing and hearing the witnesses (including the petitioner) and, after weighing and giving careful consideration to all the evidence of record, we have concluded that the respondent has not successfully borne his burden; and we have accordingly hereinabove found as an ultimate fact, that none of the returns was false or fraudulent with intent to evade tax. Respondent relies mainly upon an alleged consistent and sizable understatement of income and also upon certain alleged specific acts of fraud on petitioner's part, to carry his burden of proving fraud. Respondent used the increase in net worth plus nondeductible expenditures method to determine income for each *277 of the years involved. We have set forth in our Findings of Fact, respondent's net worth statement in full; and also we have made findings relating to the disputed items in said statement. The latter group of findings shows several errors of consequence in the net worth statement. Some of these errors were proven by petitioner; for example, petitioner proved that there was a duplication of assets for the year 1945 which resulted from respondent's inclusion of $4,500 of United States war bonds among petitioner's assets at the close of that year, when in fact the bonds had been sold earlier and the proceeds deposited in petitioner's bank account. Other errors in the net worth statement were conceded by the respondent; for example, an overstatement of personal living expenses for 1953 by $1,500. In addition to the foregoing and other proven or conceded errors appearing in the net worth statement, we have serious doubts as to the accuracy of other portions of the net worth statement; for example, we are satisfied beyond doubt that petitioner had trade accounts receivable for his Heating Company proprietorship at December 31 of each of the years 1944, 1945, and 1946; but the petitioner *278 has not satisfied us as to the amount of such receivables at either of the mentioned dates, and we accordingly are unable to displace the zero figure determined by the respondent with any other figure. The impact upon us of these errors and doubts is that, while we believe that there probably were understatements of income for each of the years, we are certain that they were not so great as those determined by the respondent, and we can not be certain of the exact amounts of the understatement for any year. Thus, while the petitioner and his wife have not sustained their burden of proving the determined deficiencies wholly incorrect, the respondent on the other hand has not established by clear and convincing evidence a pattern of clear, consistent, and substantial understatements extending over a series of years. We next consider the alleged specific acts of fraud charged against the petitioner by respondent. These acts consist mainly of alleged omissions of specific items of income from the returns. As regards the items for 1951 and 1952, they were not significant in amount; and the failure to include them on the returns was, we are convinced, due to errors of judgment or to oversight, *279 but not due to any fraudulent intent to evade a tax to be owing. The omitted items for 1953 were larger in amount; but we are not convinced that the failure to report them was due to fraud. Petitioner was a seriously ill man in 1953; and he was operating without the service of his regular bookkeeper for a month during that year. It was during this month that the check for $17,221 was received from the Hamby Company. Also, it is a close question whether the $17,221 was income for 1953 at all. [3] Also, during the same month of the bookkeeper's absence, the invoice was sent to the city of Etowah, with respect to which the unreported check from the city was paid. But it is to be remembered that the regular practice in keeping the Heating Company's books of account was to credit the sales income account at the time the invoices were mailed. However, the substitute bookkeeper failed, through lack of accounting knowledge, to make a credit to the sales account when she mailed out the invoice to the city of Etowah. The subsequent receipt of the check in payment would not, in the normal course of affairs, have constituted an income transaction with the Heating Company. The failure to treat such *280 receipt as an income transaction was not, on the facts of the instant case, fraudulent. We hold that the respondent has not sustained his burden of proving by clear and convincing evidence that the returns of petitioner, and of petitioner and his wife, were false or fraudulent with intent to evade tax. Accordingly, assessment and collection of the deficiencies and additions to tax involved in the instant case are barred by the statute of limitation. We do not reach the remaining issues set forth in our preliminary statement. Decisions will be entered for the petitioners. Footnotes
1. All section references herein are to the Internal Revenue Code of 1939, as amended, unless otherwise specified.↩
2. In one instance occurring in April 1953, a payment was received by the Heating Company from the city of Etowah for work performed. The check was turned over to petitioner, and a debit was made to his drawing account (rather than cash) and a credit was made to the account receivable with the city. Petitioner either cashed the check or deposited the same in his individual bank account.↩
3. Indeed the respondent's net worth statement includes as an asset at December 31, 1952, a contract receivable for $17,221. This has the effect of including said amount in income for 1952.↩